# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID DANIEL FAGAN, | 1:06-CV-00439 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| R. J. KIRKLAND, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction on May 25, 2004, by jury trial of one count of first degree murder in violation of Cal. Penal Code § 187. (LD-4[1].) The jury also found true the allegation that Petitioner had personally used a deadly weapon during the commission of the offense. (LD 4.) The trial court found one prior serious felony conviction allegation, one prior strike conviction allegation, and one prior prison term allegation to be true. (LD 4.) The court also found one prior serious felony conviction allegation and one prior strike

---

[1]"LD" refers to the documents lodged by Respondent with his answer.

1    conviction allegation to be not true. (LD 4.)  On July 6, 2004, Petitioner was sentenced to an

2    indeterminate term of fifty-seven years to life in state prison. (LD 4.)

3            Petitioner filed a notice of appeal to the California Court of Appeals, Fifth Appellate District

4    (hereinafter "Fifth DCA"). On August 22, 2005, the Fifth DCA affirmed the judgment. (LD 4.)

5    Petitioner then filed a petition for rehearing in the Fifth DCA on August 31, 2005, and rehearing was

6    denied on September 2, 2005. (LD 5.) On September 22, 2005, Petitioner filed a petition for review

7    in the California Supreme Court. (LD 6.) The California Supreme Court summarily denied the

8    petition on November 30, 2005. (LD 6.)

9            On April 17, 2006, Petitioner filed the instant federal petition for writ of habeas corpus in this

10   Court. Petitioner presents the following ground for relief: 1) "The trial court denied Petitioner his

11   federal constitutional rights when it refused counsel's request to be present during readback."  On

12   August 17, 2006, Respondent filed an answer to the petition. Petitioner did not file a traverse.

13                                   **FACTUAL BACKGROUND**[2]

14           At 10:00 a.m. on September 2, 2003, correctional officers at Wasco State Prison observed

15   inmate Richard Zavala go down on one knee and fall on his side in the yard of the facility. Sergeant

16   Robert Mosley was seated at his desk in the prison program office. He was able to see the prison

17   yard, which was occupied by 10 to 12 inmates rather than the usual 100. Mosley instructed

18   Correctional Officer James Wilbanks to make sure Zavala was all right.

19           Wilbanks initially walked in Zavala's direction and then ran when he saw Zavala in distress.

20   When Wilbanks reached Zavala he observed blood "gushing out" of Zavala's head and covering his

21   face. The top of Zavala's cranium was crushed in the form of "the top portion of a [baseball] bat."

22   No one was near Zavala and Wilbanks twice asked Zavala who hit him. Zavala was conscious but

23   did not answer the officer's question and instead responded, "[W]ho are you?"

24           After the incident, Correctional Officer Steve Riley found a blood-smeared baseball bat

25   stored with the athletic equipment in the prison recreation room. No usable prints were found on the

26   bat, but DNA analysis confirmed the blood matched Zavala.

27   _____

28           [2]The facts are derived from the factual summary set forth by the Fifth DCA in its opinion of August 22, 2005 (LD 4 at pp. 2-8.)

1        Billy Whitten was an inmate at Wasco State Prison on the day of the incident and testified

2   after being granted use immunity. At the time of the incident, Whitten was walking the track of the

3   minimum security, Level One yard of the prison. At the same time, Petitioner was playing baseball

4   with another inmate, known as "Shorty." Whitten saw Zavala walk out of the building and smoke a

5   cigarette. Whitten knew Zavala, whose prison nickname was "Train." From a distance of 27 feet,

6   Whitten saw Petitioner hit Zavala in the head three times with a baseball bat. Whitten also testified

7   that the bat resembled the blood-smeared baseball bat secured by Officer Riley.

8        Ray Briones was an inmate at Wasco State Prison in September 2003 and was present on the

9   day of the incident. Briones testified that members of the Southside Gang at Wasco had a meeting a

10  few days before the incident. Petitioner and Briones attended the meeting. Zavala, the "leader" of the

11  gang, came by the meeting, said he knew people were mad, and told them to keep the peace. The

12  meeting took place because Zavala had previously instructed Petitioner to bring a friend named

13  Johnny Nielsen to a specific place in the prison facility. When Petitioner complied, Zavala had some

14  confederates - a "wrecking crew" - subject Nielsen to several beatings. At the subsequent meeting,

15  gang members were upset that Petitioner did not intervene or try to help Nielsen when the beating

16  began. They were particularly upset because Zavala had tricked Petitioner into bringing his "partner"

17  Nielsen to subject him to a beating by the wrecking crew. Briones explained that by not helping

18  Nielsen, Petitioner made Southsiders from Los Angeles "look bad on the yard" when compared with

19  Southsiders from Orange County and the Inland Empire. At the meeting, Petitioner initially tried to

20  explain his conduct and ultimately said he would "take care of it."

21       On the morning of the incident, Briones asked Zavala to sell him some marijuana. Zavala

22  suggested they go outside to talk about the transaction. They went to the prison baseball field where

23  Petitioner, an inmate named Carroll, and a third inmate were playing baseball. Briones bought the

24  marijuana and smoked some with Zavala. When Petitioner asked if he could have a "hit" of the

25  marijuana, Zavala agreed, saying, "[Y]eah, come on down." Zavala handed the cigarette to

26  Petitioner, who had a baseball bat in his hand at the time. Petitioner and Zavala then started speaking

27  about the beating of Nielsen. Briones said he knew something was going to happen and started to

28  leave the area.

1   While his back was turned to his fellow inmates, Briones heard a thump that sounded like a

2   bat striking a watermelon. Briones turned around and saw that Zavala had been hit in the face and his

3   glasses had been shattered. Zavala fell and Petitioner hit him three more times with the baseball bat,

4   even though Briones told Petitioner to leave him alone.

5   Zavala was transported to the Kern Medical Center in Bakersfield. Not long after he was

6   admitted, the treating physicians determined Zavala was brain-dead. He was taken off of life support

7   and pronounced dead.

8   **DISCUSSION**

9   **I.  Jurisdiction**

10   Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

11   to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

12   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

13   375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

14   Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court,

15   which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,

16   the Court has jurisdiction over the action.

17   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

18   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

19   <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114

20   F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

21   *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)

22   (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

23   filed after the enactment of the AEDPA; thus, it is governed by its provisions.

24   **II.  Legal Standard of Review**

25   This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

26   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

27   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

28   The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

1   Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70

2   (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

3   adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

4   application of, clearly established Federal law, as determined by the Supreme Court of the United

5   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

6   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

7   538 U.S. at 70-71; see Williams, 529 U.S. at 413.

8           As a threshold matter, this Court must "first decide what constitutes 'clearly established

9   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

10   quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

11   must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

12   of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

13   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

14   the Supreme Court at the time the state court renders its decision." Id.

15           Finally, this Court must consider whether the state court's decision was "contrary to, or

16   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

17   quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

18   writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

19   question of law or if the state court decides a case differently than [the] Court has on a set of

20   materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

21   "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

22   court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

23   applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

24           "[A] federal court may not issue the writ simply because the court concludes in its

25   independent judgment that the relevant state court decision applied clearly established federal law

26   erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

27   federal habeas court making the "unreasonable application" inquiry should ask whether the state

28   court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

1   Petitioner has the burden of establishing that the decision of the state court is contrary to or

2   involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>,

3   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

4   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

5   decision is objectively unreasonable.  <u>See</u> <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th

6   Cir.1999).

7   AEDPA requires that we give considerable deference to state court decisions. The state

8   court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

9   interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

10  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

11  **III.  Review of Petition**

12  In his sole claim for relief, Petitioner alleges the trial court erred in overruling trial counsel's

13  objection to a readback of testimony to the jury without counsel being present.

14  A.  Background

15  The Fifth DCA summarized the readback incident as follows:

16  On the morning of May 24, 2004, during deliberations, the jury requested the
following information from the court:

17
18  "(1) Testimony, preliminary hearing & interview information/transcript as allowable
for : ¶ Billie Wayne Whitten, Danny Lee Carroll, Ray Briones, Antonio Alvarez,
(2) Transcript of all stipulations."

19
20  The following exchange occurred in open court outside the presence of the jurors:

21  [THE COURT:] Counsel, I have shown you the note from the jury, today's date, 9:15
a.m. We have discussed the jury's request for readback of testimony. And then a
second item is they are asking for transcripts of all stipulations.

22
23  . . . With regard to the readback of testimony from witnesses, we are going to bring
the jury out here and confirm that they want the testimony read back in its entirety,
both direct and cross. And if there's some reason why they don't want that, they can

24  indicate to us. Otherwise, it's my intention to have the court reporter go back into the
jury room, outside the presence of the defendant and counsel, and read back all of the

25  testimony, both direct and cross, as to those witnesses. [¶] Mr. Kinnison, you also
identified that at the end of the defense case there was a small amount of transcript

26  testimony that was read from the Briones interview. You want that included as well.
Correct?

27
28  MR. KINNISON [deputy public defender]: And also from the preliminary hearing, I
believe.

1   THE COURT: The portions that you read back both from the preliminary hearing transcript as well as the interview transcripts, both relating to Briones. [¶] Are all related to Briones?

2

3   MR. KINNISON: Yes.

4   THE COURT: I will instruct the court reporter to include those as well. [¶] Are you objecting to the Court having the court reporter read this back in the jury room, Mr. Kinnison?

5

6   MR. KINNISON: If that's without my being present, yes.

7   THE COURT: And that would be without your presence. [¶] I am going to cite the case of People vs. Cox, a 2003 case, citation 30 Cal.4th 916, at [p]age 963. The California Supreme Court said that readback of testimony is not a critical stage of the proceedings, and the defendant has no right nor do counsel have a right to be present during the readback of testimony. And I am also going to cite the case of People vs. Ayala . . ., a 2000 case, 23 Cal.4th 225 at [p]age 289. Strike that. That's the wrong page. Same case at [p]age 288, [f]ootnote 8, specifically for the proposition as to the Supreme Court noted that no waiver is required for the Court to allow the readback, no waiver of the defendant's presence, or there's no need for the Court to take a waiver from the defendant or defense counsel or prosecution with regard to having this readback done outside of their presence. [¶] That's my ruling. The reporter will read it back.

8

9

10

11

12

13       The Court then brought the jurors back into the courtroom and explained the readback process to them. The court then asked [Petitioner's] trial counsel whether there was anything else he wanted to add and counsel replied, "No." The court then had the jurors return to the jury room to wait for the court reporter. After a further exchange between the court and counsel, the court had the jurors return to the courtroom. The court asked whether the jurors also wanted to hear the testimony of Lieutenant Christensen and the foreperson signified in the affirmative. The court later asked the foreperson whether the court reporter went to the jury room and read back the testimony of the various witnesses. The foreperson confirmed that the reporter did so.

14

15

16

17

18

(LD 4 at pp. 8-10.)

19

20   B.  Review of Claim by State Courts

21       The claim was first presented on direct appeal to the Fifth DCA.  On August 22, 2005, the

22   Fifth DCA denied the claim in a reasoned opinion. (LD 4.) Petitioner then presented the claim in a

petition for review in the California Supreme Court. (LD 6.) The petition was denied on

23   November 30, 2005. (LD 6.) The California Supreme Court, by its "silent order" denying review of

24   the Fifth DCA's decision, is presumed to have denied the claims presented for the same reasons

25   stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

26       In analyzing Petitioner's claim, the Fifth DCA first addressed Petitioner's Confrontation

27   Clause argument under the Sixth Amendment. The court acknowledged that the Supreme Court held

28

1  in <u>Rushen v. Spain</u>, 464 U.S. 114, 117 (1983), that the Constitution requires that a criminal

2  defendant be personally present at all critical stages of the trial. (LD 4 at p. 10.) The appellate court

3  then noted that the Ninth Circuit has held that defendants have a Sixth Amendment right to be

4  present at jury readbacks, and that failure to allow defendant to be present is constitutional trial error.

5  (LD 4 at p. 13.) However, the court stated that the Supreme Court has never held that readback of

6  testimony is a "critical stage" of the trial triggering a defendant's right to be personally present. (LD

7  4 at p. 13.) Even if the failure to allow a defendant to be present is considered constitutional trial

8  error, though, the court stated the error is subject to harmless error analysis. (LD 4 at p.13.)

9       The appellate court found any error was harmless. It stated that Petitioner's trial counsel at

10  readback would have been solely as an observer. (LD 4 at p. 14.) Petitioner's counsel would have

11  had minimal, if any, ability to influence the process for Petitioner's benefit. (LD 4 at p. 14.) The

12  witnesses whose testimony was read back were not present at the process. (LD 4 at p. 14.) The court

13  informed the jury that they were not to resume deliberations until the court reporter had left. (LD 4 at

14  p. 14.) Last, the court noted there was nothing in the record to suggest an impropriety by the reporter

15  or the jurors during the course of the readback. (LD 4 at p. 14.)

16       The Fifth DCA then addressed Petitioner's due process claim. The appellate court noted that

17  a defendant has the right to be present in person at any state of the criminal proceeding that is critical

18  to its outcome if his presence would contribute to the fairness of the procedure. <u>See</u> <u>Kentucky v.</u>

19  <u>Stincer</u>, 482 U.S. 730, 745 (1987). (LD 4 at p. 17.) The court stated that due process demands that a

20  defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his

21  absence. (LD 4 at p.17.)

22       The Fifth DCA found that even if due process required Petitioner's presence, he did not

23  suffer any prejudice. No witnesses appeared and no new testimony was offered. Counsel would have

24  been at most an observer. The court found there was no possibility that the fairness of the readback

25  proceeding would have been frustrated or thwarted by the absence of defense counsel. (LD 4 at

26  p.17.)

27       C.  Analysis of Claim

28       In <u>Rushen v. Spain</u>, 464 U.S. 114, 117 (1983), the Supreme Court recognized that "the right

to personal presence at all critical stages of the trial ... [is a] fundamental right[] of each criminal defendant."  Implicit in this holding, however, is the limitation of that right, which is a defendant does not have the right to be present at non-critical stages of the trial. In La Crosse v. Kernan, 244 F.3d 704, 708 (9ᵗʰ Cir.2001), the Ninth Circuit noted that the Supreme Court "has never addressed whether readback of testimony to a jury is a 'critical stage[] of the trial' triggering a criminal defendant's fundamental right to be present." Given the lack of guidance from the Supreme Court, it cannot be said that the state court decision was contrary to clearly established Federal law as established by the Supreme Court. Id. at 708.

Nevertheless, in Williams v. Taylor, 529 U.S. 362, 398 (2000), the Supreme Court held that a state court decision may represent an unreasonable application of Supreme Court precedent if it "unreasonably refuses to extend [an established legal principle] to a new context where it should apply." In Fisher v. Roe, 263 F.3d 906, 915-17 (9ᵗʰ Cir.2001), the Ninth Circuit found such a case in this context. In Fisher, the trial court read testimony back to the jury without the knowledge or consent of the defendants or their attorneys. Id. The Ninth Circuit distinguished La Crosse based on the fact that in La Crosse the defense attorney "was consulted by the court and agreed to the proposed procedure and stipulated that his client need not be present." Id. at 916. In Fisher, however, the readback "occurred not only in the absence of the defendants and their lawyers, but without their knowledge and participation." Id.

Here, the trial court informed and consulted Petitioner's defense counsel with respect to the readback of testimony to the jury. Defense counsel objected to allowing the court reporter to go into the jury deliberation room and read the testimony back to the jury, but the Court overruled counsel's objection. The trial court determined that counsel's presence was not necessary because the readback was not a critical stage of the proceedings. Therefore, the facts in this case lie between La Crosse and Fisher in that defense counsel knew of the readback but did not agree to the procedure outside of his presence. Therefore, there is some question whether the trial court committed constitutional trial error in the Ninth Circuit's view, but the Court cannot say that the state court's conclusion was contrary to clearly established Federal law.

Nevertheless, even if the Court were to grant that constitutional trial error occurred, relief is

1    not warranted. As discussed by the appellate court, if the error constitutes constitutional trial error,

2    the harmless error standard applies. See United States v. Rosales-Rodriguez, 289 F.3d 1106, 1109-

3    1111 (9th Cir.2002); Turner v. Marshall, 63 F.3d 807, 814 (9th Cir.1995), *overruled on other grounds*

4    *by* Tolbert v. Page, 182 F.3d 677, 685 (9th Cir.1995); United States v. Kapau, 781 F.2d 740, 743 (9th

5    Cir.1986). It must be determined whether the error had "a substantial and injurious effect or

6    influence in determining the jury's verdict." Fisher v. Roe, 263 F.3d 906, 917 (9th Cir.2001), *citing*

7    Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), *quoting* Kotteakos v. United States, 328 U.S. 750,

8    776 (1946). If, after reviewing the record, this Court remains in "grave doubt" as to whether the error

9    was harmless, relief must be granted. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

10          In this case, the appellate court reasonably concluded the error was harmless. No witnesses

11   appeared and no new testimony was offered. At most, defense counsel would have been an observer.

12   Further, the jury was informed that they must wait until the reporter left before they could resume

13   deliberations. In addition, there is nothing in the record demonstrating any impropriety occurred.

14   After the transcripts were read back by the court reporter, the trial court verified with the jury

15   foreperson that readback had been accomplished. Therefore, the Court is satisfied that the trial error,

16   if it can be deemed such, was harmless because it did not have a substantial and injurious effect or

17   influence in determining the verdict.

18          Accordingly, the state court rejection of this claim was not contrary to or an unreasonable

19   application of clearly established Federal law as set forth by the Supreme Court. The petition should

20   be denied.

21                                    **RECOMMENDATION**

22          Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

23   DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter

24   judgment for Respondent.

25          This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

26   States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

27   of the Local Rules of Practice for the United States District Court, Eastern District of California.

28   Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party

1   may file written objections with the court and serve a copy on all parties.  Such a document should

2   be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

3   objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail)

4   after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

5   28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

6   time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

7   Cir. 1991).

8

9   IT IS SO ORDERED.

10  **Dated:   July 3, 2008**                          **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court
E. D. California        cd                        11